# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

FAIR HOUSING CENTER OF )
CENTRAL INDIANA, INC.; VIRGINIA )
MORTON; SHARNA MCFARLAND; )
and LINDSAY ADAMS, )
)    Case No. 1:16-cv-00300-SEB-DML
      Plaintiffs, )
)
      v. )
)
GRANDVILLE COOPERATIVE, INC; )
KAREN MITCHELL; and )
KIRKPATRICK MANAGEMENT CO. )
INC., )
)
      Defendants. )
)
)
)

## [PROPOSED] SECOND AMENDED COMPLAINT

### I. Introduction

1.     Sharna McFarland and her mother, Virginia Morton, applied to rent at Grandville Cooperative. Morton is quadriplegic. Defendants, Grandville's owner and operators, rejected plaintiffs' application because, in their own words, the dwelling "is not handicap accessible and it will be a liability to offer you a unit that is not accommodating to everyone in the household."  McFarland and her mother turned to the Fair Housing Center of Central Indiana for assistance.

2.     Based on McFarland and Morton's complaint, the Fair Housing Center investigated, speaking with dozens of residents. Those residents reported that, for years, Grandville has imposed unreasonable restrictions on children's

use of Grandville's common areas. Every year, around when school lets out, Grandville distributes notices reminding residents that "children under age 10 are not to be outside on the grounds at any time without a supervisor," that "no children should be in the common areas after 9:00 p.m.," that "Children are not allowed to play in front of their units," and that "we do not allow for children to play in the front of the buildings in the grass." Lindsay Adams is a Grandville resident who took these rules to heart, keeping her two young children inside.

3.      Now, the Fair Housing Center, McFarland, Morton, and Adams bring this case to vindicate their rights and to end defendants' discrimination against persons with disabilities and families with children.

## II. Jurisdiction & Venue

4.      The Court has jurisdiction over plaintiffs' federal claims under 28 U.S.C. § 1331. Additionally, the Court has supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367 because those claims are related to plaintiffs' federal claims and arise out of a common nucleus of related facts.

5.      Venue is proper in the Southern District of Indiana under 28 U.S.C. § 1391 because the events giving rise to these claims occurred in Marion County, Indiana, and defendants conduct business in this district.

## III. Parties

6.      Plaintiff Fair Housing Center of Central Indiana Inc. is a private, non-profit corporation organized under the laws of the state of Indiana. The Fair Housing Center's purpose is to ensure equal housing opportunities by

eliminating housing discrimination through advocacy, enforcement, education, and outreach.

7.     Plaintiff Virginia Morton is quadriplegic, making her a person with a disability within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(h), and the Indiana Fair Housing Act, Ind. Code § 22-9.5-1-1 *et seq.*

8.     Plaintiff Sharna McFarland is Morton's daughter who intended to reside in the dwelling with Morton, making her a person associated with the buyer or renter of a dwelling under the Fair Housing Act, 42 U.S.C. § 3602(f)(1), and the Indiana Fair Housing Act, Ind. Code § 22-9.5-1-1 *et seq.*

9.     Plaintiff Lindsay Adams is a resident of Grandville Cooperative. She is the mother of four children, ages 14, 12, 5, and 3.

10.     Defendant Grandville Cooperative Inc. is a private, non-profit corporation organized under the laws of the state of Indiana.

11.     The Grandville Cooperative housing complex is a dwelling within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b), and the Indiana Fair Housing Act, Ind. Code § 22-9.5-2-8.

12.     Defendant Karen Mitchell is the president of Grandville's Board of Directors.

13.     Defendant Kirkpatrick Management Co. Inc. is a for-profit corporation organized under the laws of the state of Indiana.

14.     Kirkpatrick is a property management firm.

15.     Each defendant was, at all times relevant, the agent, employee or representative of each other defendant. Each defendant, in doing the acts or in

omitting to act as alleged in this complaint, was acting within the course and scope of his or her actual or apparent authority pursuant to such agency, or the alleged acts or omissions of each defendant as agent were subsequently ratified and adopted by each defendant as principal.

## IV. Facts

### A. Grandville

16.    Grandville is a 156-unit housing complex located in Indianapolis, Indiana.

17.    Grandville was developed and operates with federal housing funding and financing. Grandville was constructed and developed utilizing the United States Department of Housing and Urban Development (HUD) Section 236 mortgage program under the National Housing Act (12 U.S.C. § 1715 z-l). Additionally, Grandville has a Section 8 Project-Based Rental Assistance (PBRA) contract, under Section 524 of the Multifamily Assisted Housing Reform and Affordability Act of 1997, 42 § U.S.C. 1437f, and utilizes the PBRA federal housing program to make rent affordable to lower income tenants. Eligible tenants must pay the highest of 30 percent of adjusted income, 10 percent of gross income, or the portion of welfare assistance designated for housing or the minimum rent established by HUD.

18.    Grandville is a cooperative corporation property. Each member of the cooperative owns one share and has one vote in the cooperative. The cooperative corporation holds title to the property and is responsible for the mortgage, if any.

19.    The Grandville Board of Directors is supposed to be elected by the members of the cooperative. The directors set policy, establish rules and determine how money is spent.

20.    To become a resident of Grandville, a prospective resident must meet standards established by the Grandville Board of Directors.

### B. Kirkpatrick

21.    Kirkpatrick manages dwellings throughout the Midwest. It is one of the largest, if not the largest, property management company in Indianapolis, managing more than 10,000 dwellings. It identifies itself as an expert in the field of cooperative housing management.

22.    Kirkpatrick provides services to Grandville's board and residents. It is identified as the property manager on Grandville's promotional materials. It has provided onsite staff to direct the management and operation of Grandville.

23.    Among its management functions, Kirkpatrick is responsible for guiding Grandville's board and staff in compliance with fair housing laws, financial management, and reporting.

24.    It also provides direction and guidance, including the creation of forms used by Grandville, for screening and selecting prospective residents. Kirkpatrick's name appears prominently on Grandville's application as the cooperative's manager. Its name and contact information appear on public websites as the point of contact for prospective residents interested in Grandville.

25.    Kirkpatrick has been named as a respondent in at least two prior fair housing complaints, filed with the Indiana Civil Rights Commission,

including at least one case alleging housing discrimination on the basis of disability.

## C. Virginia Morton and Sharna McFarland

26.    Virginia Morton is quadriplegic.

27.    Virginia Morton relies on her adult daughter, Sharna McFarland, and a part-time at-home nurse for assistance with daily activities. Morton spends most days at home in a hospital bed because of her disability.

28.    In December 2014, McFarland visited the Grandville front office and expressed interest in leasing a dwelling there.

29.    Specifically, McFarland was interested in a two-story townhouse, with three bedrooms upstairs and the living space downstairs, including a half bathroom, kitchen, dining room, and living room. McFarland and her two children planned to use the upstairs bedrooms while Morton, who utilizes a hospital bed due to her paralysis, would use the downstairs living room.

30.    During her December 2014 visit to the Grandville front office, McFarland was informed of a waitlist and the requirement to complete an application and submit a $20.00 money order to reserve a space on the waitlist. McFarland completed her application and submitted the money order.

31.    In March 2015, McFarland received a letter from Grandville asking if she was still interested in leasing the dwelling. McFarland responded that she was.

32.    In July 2015, McFarland again visited the Grandville front office. She inquired about the need for Morton to complete a separate application.

Grandville management staff Camille Mitchell (who is the daughter of board president and defendant Karen Mitchell) told McFarland that Morton could be on the lease but she would need to complete a separate application and also submit a $20.00 money order. McFarland completed the application on Morton's behalf and submitted the money order.

33.     A few weeks later, McFarland received a letter from Grandville dated July 27, 2015, stating: "This Letter is to notify you that Grandville Cooperatives' Board of Directors has scheduled a mandatory New Member Orientation, time listed below." The New Member Orientation was scheduled for 11:30 a.m. on August 5, 2015. The letter was signed by "C. Mitchell."

34.     The signature block identifies "C. Mitchell" as "Management Staff … Grandville Cooperative Board of Directors."

35.     A true and correct copy of the July 27th letter is attached to the complaint as Exhibit 1.

36.     On August 5, 2015, McFarland attended the New Member Orientation at Grandville.

37.     Present at the meeting were McFarland and three Grandville Board of Directors, including Karen Mitchell.

38.     During that meeting, McFarland stated that Morton could not climb stairs. McFarland was asked why and McFarland explained that Morton was a quadriplegic. The Grandville Board of Directors then asked several questions about Morton's disability, including what happened; how did she get like that; how long had she been like that; and who takes care of her.

39.     Following this discussion, McFarland stated that it was her understanding that the August 5, 2015, meeting was her New Member Orientation. Karen Mitchell replied that it was not a New Member Orientation but was instead a "Pre-Interview" meeting. McFarland was then told that she would receive a letter from Grandville after the Pre-Interview.

40.     Shortly after the meeting, McFarland received a letter from Grandville dated August 5, 2015 – the same day as the New Member Orientation-turned-Pre-Interview – entitled "Deny Application." That letter stated: "We are sorry to let you know that we must reject your application. At this time, Grandville Cooperative is not handicap accessible and it will be a liability to offer you a unit that is not accommodating to everyone in the household." The letter was signed by Camille Mitchell. The signature identified Camille Mitchell as "Office Staff, Property Manager / Agent for Owner."

41.     A true and correct copy of the August 5th letter is attached as Exhibit 2.

### D. The Fair Housing Center Investigates

42.     The Fair Housing Center recognizes the importance of "home" and envisions a country free of housing discrimination where every individual, group and community enjoys equal housing opportunity in a bias-free and open housing market. The Fair Housing Center envisions a country where integrated neighborhoods are the norm, and private and public sectors guarantee civil rights in an open and barrier-free community committed to healing the history of discrimination in America.

43.     The Fair Housing Center offers programs to fight housing discrimination and promote equal housing opportunity. Its education program works to increase fair housing knowledge by conducting trainings, hosting conferences, distributing publications, and other activities to educate the public about fair housing laws. The advocacy program assists persons who feel they may be victims of housing discrimination by helping them to understand their rights and options under fair housing laws. Fair Housing Center conducts fair housing investigations under this program, both client-based and systemic, to determine if unlawful discrimination may be occurring. Finally, the community outreach program assists persons, neighborhoods, and communities who have been impacted by unlawful discrimination, disinvestment, or due to unequal housing opportunity.

44.     On August 25, 2015, McFarland called the Fair Housing Center to discuss the Grandville situation and to inquire about her and Morton's fair housing rights. Based on the information received, the Fair Housing Center counseled McFarland about her fair housing rights.

45.     On September 9, 2015, the Fair Housing Center sent Grandville a letter indicating that it would be investigating allegations received about discriminatory housing practices at Grandville.

46.     That same day, the Fair Housing Center also sent all current Grandville residents a letter providing them with educational materials about their fair housing rights and advising them of the Fair Housing Center's investigation.

47.     The Fair Housing Center diverted resources and staff time to counteract the effects of defendants' discriminatory housing practices. Its staff reached out to Grandville residents about their fair housing rights and distributed literature to educate them about those rights. Its mission was frustrated by the discrimination uncovered.

### E. Reports of Familial Status Discrimination

48.     During its investigation, the Fair Housing Center spoke with over two dozen residents. Of those, more than 20 reported some kind of discrimination by Grandville and Kirkpatrick against families with children.

49.     A few complaints kept coming up again and again in the Fair Housing Center's interviews:

    a.  Fourteen residents reported that children are not allowed to play out in front of the residences.

    b.  Fourteen residents reported that children are not allowed to play on the grass.

    c.  Six residents reported that Karen Mitchell would yell and even swear at children she saw breaking these rules.

d.  Three residents reported that the one area children were allowed to play in—a narrow band between the backs of the residences—was at a low grade, without drainage, and would often flood, making it useless for the children. That area looks like this:



e.  And, finally, five residents reported that the rules aren't enforced against the children and friends of the Mitchell family.

50.   The Fair Housing Center was also able to collect from a resident years' worth of written notices containing Grandville's written rules about children. True and correct copies of some of these rules are attached as exhibits 3 through 8.

51.   Exhibit 6 is a "Grandville News" newsletter dated May 2014. It provides that "Children are not allowed to play in front of their units."

52.   Exhibit 7 is an undated "Summer Rules & Regulations" notice. The first line is "Parents, children are your responsibility and should be supervised. No children should be in the common areas after 9:00 p.m."

53.   Exhibit 8 is a notice dated May, 27, 2015, from Grandville to its "Members." The first line is "This letter serves as a reminder to all of the households at Grandville Cooperative that children under the age of 10 are not to be outside on the grounds at any time without supervision." It continues with a threat: "If we witness your child or children unsupervised you will be sent a letter. If the behavior continues, your household may be put on a final warning before eviction."

### F. Lindsay Adams

54.   One of the Grandville residents who reported familial status discrimination to the Fair Housing Center was Lindsay Adams. Adams lives at Grandville with her young children. Adams and her children moved to Grandville in November 2013.

55.   That first summer, and every summer since, Adams recalls receiving notices from Grandville that contain rules restricting children's use of common

areas. Those rules include that children cannot play in the large grass-covered areas in front of the residences; that children cannot play outside unsupervised at all; and that children must come inside early in the evening.

56. To Adams, the rules are unreasonable. The large, grass-covered area in front of her unit is an ideal place for her children to play. It is far from the street and traffic and directly in front of a large window through which Adams can watch her children while working inside the home.

57. That grass-covered area looks like this:



58.    On at least one occasion in the past two years, Karen Mitchell has personally enforced these rules against Adams. Adams was outside her residence watching one of her children ride her bike. Karen Mitchell drove-up in front of Adams' residence and told Adams that she'd have to walk directly alongside of her child. In other words: Under Grandville's "supervision" rule, watching from a distance was not good enough.

59.    Adams has repeatedly had notices sent to her informing her that she or her children have violated Grandville's rules about children. Because these notices threaten Adams with eviction, she no longer lets her children play outside.

### G. Plaintiffs' Injuries

60.    **Morton & McFarland**. By reason of Defendants' unlawful acts or practices, Morton and McFarland have suffered economic loss; loss of time and effort; emotional distress, including humiliation, mental anguish, loss of dignity, and embarrassment; and otherwise sustained injury. Defendants deprived Morton and McFarland of an important housing opportunity, denying them the use and enjoyment of a dwelling for themselves and their family. Accordingly, Morton and McFarland are entitled to compensatory damages.

61.    **The Fair Housing Center**. Defendants' discriminatory and negligent actions have caused, and are continuing to cause, harm to plaintiff Fair Housing Center by frustrating its mission to ensure equal housing opportunities by eliminating housing discrimination. Defendants' actions have interfered with all the efforts and programs of the Fair Housing Center by forcing

the Fair Housing Center to divert its scarce resources from those programs and into identifying and counteracting defendants' unlawful practices. Defendants' unlawful practices have caused the Fair Housing Center to suffer economic losses in staff pay, in funds expended investigating, and in the inability to prevent other unlawful housing practices. Defendants' actions have set back the Fair Housing Center's vision of a country free of housing discrimination where every individual, group and community enjoys equal housing opportunity and access in a bias-free and open housing market, by impeding their efforts to educate the public about discriminatory housing practices and to provide counseling and referral services to the public about housing discrimination. Accordingly, plaintiff Fair Housing Center is entitled to compensatory damages.

62.   **Lindsay Adams.** By reason of Grandville, Kirkpatrick, and Karen Mitchell's discriminatory acts or practices, Adams has suffered economic loss; loss of time and effort; emotional distress, including humiliation, mental anguish, loss of dignity, and embarrassment; and otherwise sustained injury. Defendants deprived Adams and her children of the use of the common areas associated with her residence, which are an important feature of her housing. Accordingly, Adams is entitled to compensatory damages.

63.   In doing the acts of which each plaintiff complains, defendants acted with oppression or reckless disregard of the rights of each plaintiff. Accordingly, each plaintiff is entitled to punitive damages.

64.     There now exists an actual controversy between defendants and plaintiffs regarding defendants' duties under the federal and state fair housing laws. Accordingly, each plaintiff is entitled to declaratory relief.

65.     Unless enjoined, defendants will continue to engage in the unlawful acts and the pattern or practice of discrimination described in this complaint. Plaintiffs have no adequate remedy at law. They now suffer and will continue to suffer irreparable injury from defendants' discriminatory acts against persons with disabilities unless relief is provided by this Court. Accordingly, plaintiffs are entitled to injunctive relief.

## V. CLAIMS

### A. First Claim

### [Fair Housing Act]

### All Plaintiffs v. All Defendants

66.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

67.     Defendants injured plaintiffs by committing discriminatory housing practices in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, et seq.

## B. Second Claim

## [Rehabilitation Act]

## McFarland & Morton v. All Defendants

68.   Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

69.   Defendants Grandville and Kirkpatrick injured plaintiffs by discriminating against them in the operation of Grandville in violation of the Rehabilitation Act, 29 U.S.C. § 794.

## C. Third Claim

## [Indiana Fair Housing Act]

## All Plaintiffs v. All Defendants

70.   Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

71.   Defendants injured plaintiffs by committing discriminatory housing practices in violation of the Indiana Fair Housing Act, Ind. Code § 22-9.5.

## D. Fourth Claim

## [Negligence]

## All Plaintiffs v. All Defendants

72.   Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

73.   Defendants Grandville and Kirkpatrick injured plaintiffs Morton, McFarland, and Adams by want of ordinary care or skill in their ownership or management of their property and agents, including defendant Karen Mitchell

and Camille Mitchell. This negligence includes their failure to train, monitor and supervise both Mitchells and their failure to ensure their compliance with the federal Fair Housing Act, the Rehabilitation Act, the Indiana Fair Housing Act, and applicable regulations. Accordingly, plaintiffs Morton, McFarland, and Adams are entitled to an award of damages against defendants Grandville and Kirkpatrick under Ind. Code § 34-51.

## VI. RELIEF

WHEREFORE, plaintiffs pray for entry of a judgment against defendants that:

1.      Awards actual and compensatory damages under the Fair Housing Act, 42 U.S.C. § 3613(c), the Rehabilitation Act, 29 U.S.C. § 794(a), the Indiana Fair Housing Act, Ind. Code § 22-9.5, and for negligence;

2.      Awards punitive damages under the Fair Housing Act, 42 U.S.C. § 3613(c), and the Rehabilitation Act, 29 U.S.C. § 794(a);

3.      Declares that defendants have violated the Fair Housing Act, 42 U.S.C. § 3613(c), the Rehabilitation Act, 29 U.S.C. § 794(a), and the Indiana Fair Housing Act, Ind. Code § 22-9.5;

4.      Enjoins all unlawful practices complained about herein and imposes affirmative injunctive relief requiring defendants, their contractors, agents, employees, assignees, and all persons acting in concert or participating with them, to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants without regard to disability as required by the federal and state fair housing laws;

5.      Awards costs of suit, including reasonable attorneys' fees; and,

6.    Awards all such other relief as the Court deems just.

Dated: April 13, 2016.


Respectfully submitted,


s/ Thomas Kayes
Thomas Kayes (*pro hac vice*)
  Illinois Bar No. 6315461
BRANCART & BRANCART
77 West Washington Street, Suite 1313
Chicago, IL 60602
312 / 857-8665
Fax: 650/879-1103
tkayes@brancart.com

Christopher Brancart (*pro hac vice*)
  California Bar No. 128475
BRANCART & BRANCART
P.O. Box 686
Pescadero, CA 94060
650/879-0141
Fax: 650/879-1103
cbrancart@brancart.com

Thomas E. Crishon
  No. 28513-49
Melissa L. Keyes
  No. 30152-49
INDIANA PROTECTION & ADVOCACY SERVICES
4701 N. Keystone Ave., Suite 222
Indianapolis, IN 46205
317/722-5555
Fax: 317/722-5564
tcrishon@ipas.IN.gov
mkeyes@ipas.IN.gov

Attorneys for the Plaintiffs

**INDEX OF EXHIBITS**

Exh. 1      New Member Orientation Invitation (7/7/15)

Exh. 2      Rejection Letter (8/5/15)

Exh. 3      Grandville Living Guidelines (2005)

Exh. 4      Spring Rules (Undated)

Exh. 5      Rules Letter (2/23/13)

Exh. 6      Grandville Newsletter (5/2014)

Exh. 7      Summer Rules and Regulations (Undated)

Exh. 8      Rules Letter (5/27/15)



Grandville Cooperative, Inc.
3520 Calhoun Street
Indianapolis, In 46203
Phone: (317) 783-7672
Fax: (317) 782-4318
TTY: 711

July 27, 2015

SHARNA MCFARLAND

2866 N CHESTER AV.
Indianapolis, In 46218

Dear Applicant,

    This Letter is to notify you that Grandville Cooperatives' Board of Directors has scheduled a mandatory _New Member Orientation_, time listed below. The Orientation will take place at the Grandville cooperatives office.

          **DATE:**          **Wednesday  August 5, 2015**

          **TIME:**          **11:30A.M.**

We hope that this time and date will not interfere with any other prior engagements and that you are able to meet at the time listed above. If you have any questions please contact Grandville Cooperatives main office at (317) 783-7672. Office hours listed below.

## Hours of Operation
Monday-Tuesday 9:00 am – 6:00 pm
Thursday – Friday 9:00- 6:00 pm
CLOSED: Wednesdays & Weekends

Sincerely,

C. Mitchell

Management Staff
Grandville Cooperative Board of Directors
Grandville Cooperative, Inc.
(317) 783- 7672 TTY: 711

EXHIBIT
PENGAD-Bayonne, N. J.

INDIANAPOLIS IN 462

28 JUL 2015  PM 6 L

Grandville Cooperative Inc.
3520 Calhoun Street
Indianapolis, In 46203

Ms. Sharna McFarland
2866 N. Chester Ave.
Indpls. IN 46218

46218302166

**DENY APPLICATION**

Date:  08/05/2015

From:  Office Staff , Property Manager / Agent for Owner
       Grandville Cooperative, Inc
       3529 Calhoun St.
       Indianapolis, IN 46203
       (317) 783-7672
       Kirkpatrick3520@sbcglobal.net

To:    SHARNA MCFARLAND
       2866 N Chester Ave

       Indianapolis,  IN  46218-3021

Dear SHARNA MCFARLAND:


We are sorry to let you know that we must reject your application.  At this time, Grandville
Cooperative is not handicap accessible and it will be a liability to offer you a unit that is not
accommodating to everyone in the household.

If you want to discuss this decision, you must write to us or call us within 14 days to set up a
meeting. You can call us at (317) 783-7672.


Sincerely,
By _Camille Mitchell_

Office Staff , Property Manager / Agent for Owner


Note: Persons with disabilities have the right to request reasonable accommodations to
      participate in the informal hearing process.


EXHIBIT
2

*Grandville*
**CO-OPERATIVE, INC.**

**Grandville Cooperative Inc.**
3520 Calhoun Street
Indianapolis, In 46203

06 AUG 2015 PM 3 L

Sharna McFarland
2866 n. Chester Ave.
Indpls. IN 46218

46218302168

## GRANDVILLE LIVING GUIDELINES
## (RULES & REGULATIONS REVISED APRIL 1, 2005)

### PRELUDE

Welcome to Grandville Cooperative, Incorporated.  Contained herein is a revised list of Guidelines (Rules & Regulations) which were published pursuant to the By-Laws with the intent that these Rules we will make our cooperative community a more pleasant place to live.  These Guidelines are rules and regulations described in Article 13 of your Occupancy Agreement.  Failure to abide by these rules, where applicable to you, could result in default in your Occupancy Agreement obligations and possibility the loss of membership.  In this regard, all members should familiarize themselves with all the terms and conditions of the Occupancy Agreement, the various documents contained in the Member's Handbook, which include the Cooperative Articles of Incorporation, the By-Laws, and any Amendments that are presently applicable.

From time to time we will further notify you of future changes that might be made in the Rules and Regulations to more adequately meet the responses and needs of the coming years.  Each member is responsible to know the Rules and regulations, and should recognize that they are created to make Grandville Cooperative a peaceful and enjoyable community for all members and guests.

### Section 101 Housing Charges

101.1- Monthly charges are due on or before the first of each month without notice or demand.

101.2- A late charge in the amount of $35.00 at the present time (subject to change per Board of Directors) will be assessed for each payment of carrying charges not received by the end of the business day on the 10th day of each calendar month.  The late charge will be assessed if the payment is not received by open of the next business day.  If the 10th falls on a weekend or a holiday, the grace period is extended to the open of the next business day.  The Holidays are New Year's Day, Martin Luther King Day, Easter, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, the day after Thanksgiving, Christmas Day, and/or the dates set for celebration of any of the above under Federal Law.

101.3- All payments made by a member are first applied to the oldest balance due and a late fee is assessed whenever a balance due remains unpaid.

101.4- Any Member whose account is left unpaid at the close of the business day on the 21st of the month will have legal action taken against him/her for collection, and may suffer eviction and loss of membership as a result.



EXHIBIT
3

101.5- If you should have trouble meeting your monthly charges, it is advised that a meeting with the Property Manager should be requested prior to your account becoming delinquent. If you choose not to follow the proper procedure, you will be referred to the attorney for immediate action. A request for a meeting with the Property Manager does not guarantee that any relief can be granted.

101.6- Any member who pays his carrying charges after the 10th day of the month for three consecutive monthly periods during any calendar year may be issued a termination notice of their membership for possession within 10 days.

101.7- If carrying charges are mailed to the leasing office, it is the responsibility of the member to ensure that they will be received by the end of the business day on the 10th of each month. Payments received after the 10th, even if dated before the 10th, will be considered late.

101.8- Any member whose payment to the Cooperative is made by a check returned for non-sufficient funds (NSF) will be assessed a $20.00 NSF fee on the second time and each time thereafter. Members must understand that their check will be deposited on the day of receipt and funds need to be available in their account to cover the amount of their check.

101.9- Members submitting more than one NSF check in any calendar year will be required to submit all future payments by money order, cashier's check, or certified funds.

## Section 102- Utilities

102.1-Gas is furnished by the Cooperative. The members are responsible for electricity and any optional services such as telephone bills.

102.2 Since Gas is furnished by the Cooperative, it is incumbent upon the member to keep the windows closed during the cold season where gas is utilized, and to keep doors closed as often as possible. Failure to take adequate precautions in regard to, or misuse of windows and doors during the heating season can result in eviction.

## Section 103- Garbage Disposal

103.1- No metal, large bones, glass, plastic, or other insoluble material is to be placed in the garbage disposal. Use only cold water while running your garbage disposal.

103.2- You must always check for foreign objects before you use the garbage disposal. If the object is stuck you must press the reset button. If this method does not work, you must call the office to report a work order. You are not permitted to fix the disposal yourself.

**Section 104- Waterbeds**

104.1- No water beds are permitted on the second floors of the Cooperative, unless such waterbed was placed there prior to June 22, 1992.

104.2- All members having waterbeds must provide the Cooperative with insurance to protect the Cooperative's property in the event of a breakage, spillage, or other damage caused thereby due to the weight of the waterbed or other incident.

104.3- It is a condition prior to having a waterbed that such insurance is provided to the Cooperative, naming the Cooperative as a co-insured.

**Section 105- Maintenance**

105.1- All maintenance items whether a matter of breakage or emergency in nature should be reported to the office as soon as they occur.

105.2- All maintenance requests, except emergencies, should be called in between the hours of 9:00a.m. and 6:00 p.m.

105.3- If you are locked out, a lockout fee is charged. If the Cooperative lets you in between the hours of 8:00 a.m. and 6:00 p.m. the lockout fee is $5.00. If the Cooperative emergency maintenance staff has to let you in after hours between 6:00 p.m. and 8:00 a.m., the lockout fee is $20.00. No one will be let into their unit unless they have proper identification or proof that they reside at the unit. Lock-out fees are to be paid within thirty (30) days from the date of lockout. Failure to pay these fees within the 30-day time period will result in the fees being added to Member's account and are subject to late charges.

105.4- There is a $20.00 lock change fee when a Member requests to have their original locks changed by our maintenance staff. This fee must be paid within thirty (30) days from the date of installation of the new locks and are subject to be added to the Member's account. Applicable late fees will be assessed if not paid within the thirty day time period.

105.5- No additional locks may be placed on the door without the consent of the Cooperative in writing. In order to protect the Cooperative for insurance purposes as well as emergencies to unit, a key must be provided to the Cooperative for each lock added to any door in the Cooperative, whether interior or exterior.

**Section 107- Motorcycles and Mopeds**

107.1- Motorcycles and mopeds must be parked in the parking lot or in the spaces provided for parking.

107.2- These vehicles may be stored or when not in use parked on patios only with written consent of the Cooperative.

107.3- Motorcycles and Mopeds are not to be stored within the unit or driven on sidewalks or grass.

107.4- All Members and any Guests are not permitted to perform any type of auto repair or wash their own vehicles on Cooperative property.

**Section 108 Safety and other General Rules**

108.1- Walkways and driveways used in common by the members of the Cooperative are not to be obstructed at any time.

108.2- Members shall not permit members of their families or guests to ride their bicycles or leave them standing in a manner that would interfere with the full use of walkways by pedestrians.

108.3- No toys or lawn furniture is to be left in front of units and must be brought in at the end of each day.

108.4- Children shall not be permitted to play in or around the trash dumpsters and Members are responsible to supervise their children so such conduct does not occur.

108.5- Storage of self-propelled vehicles in your unit is strictly forbidden, with the exception of non-motorized children's toys.

108.6- Storage of flammable liquids, cans, etc. is prohibited since it is a danger to the Cooperative property and Members. Any increase in cost of fire insurance premiums or damage to the Cooperative property due to violation of this rule by a Member is subject to eviction.

108.7- Use of firearms, sling shots, BB guns, or bows and arrows are strictly prohibited on Cooperative grounds.

108.8- Members shall not permit parking areas, landscape areas, and/or recreational areas to be cluttered with bicycles, carriages, sleds, toys, barbeque grills, waste receptacles, or any similar type objects.

108.9- Fireworks are forbidden within the Cooperative and are illegal to use within the state of Indiana. You will be subject to arrest if you violate this rule.

108.10- Anyone causing broken glass to occur on sidewalks, driving, or parking areas are to immediately pick up all debris, or they will risk possible eviction.

108.11- Children must be supervised by a responsible adult at all times and shall not conduct themselves as to endanger himself or herself or the well being of other Members. This includes, but is not limited to climbing trees or patio fences. Members are responsible for the conduct of their children and guests.

108.12- Garbage and refuse must be wrapped and secured in plastic bags and placed inside the trash dumpsters. No trash should be placed outside the dumpster or in the dumpster area.

108.13- Toilets, basins, or other plumbing fixtures shall not be used for any purposes other than what they are designed. No sweepings, rubbish, rags, excessive paper, newspaper, toys, etc. shall be thrown into them. Damage resulting from misuse of such facilities will be chargeable to the Member for the cost of replacement or damage.

108.14- Use of kerosene, catalytic, or electric space heaters is prohibited under all conditions.

## Section 109- Disturbances

109.1- Residents shall not make or permit any public or private nuisances, any disturbing noises, including sounds from music, stereo, television, or social gatherings in their units or elsewhere on the property, that causes other Members any disturbance.

109.2- Members are responsible for the actions of their children, guests, pets and themselves.

109.3- Members' guests who cause disturbances will be asked to leave the property and will be ordered to permanently stay off Cooperative property if the disturbances continue. Any conduct that threatens the health, welfare, and safety of the property or its Members will result in immediate demand to stay off of the Cooperative property.

109.4- In order to protect the peaceful enjoyment of others, please restrict noise between the hours of 10:00 p.m. and 10:00 a.m. on normal working days.

109.5- Profanity by anyone is not allowed in common areas of the Cooperative grounds.

109.6- Children must be adequately supervised at all times. Parents are responsible to provide their children with a means of access to their unit when the parents are absent.

109.7- Any Member(s) who has taken, destroyed property or personal belongings of another member or the Cooperative's property will be subject to immediate eviction and referred to the appropriate authorities.

109.8- No alcoholic beverages will be permitted in any common areas of the Cooperative grounds.

109.9- Parents and/or guardians shall be directly responsible to the Cooperative for the conduct and actions of their children and will be held liable for any damages or violations of these Rules and Regulations. Should a parent or guardian of a child refuse to accept responsibility for the actions of his/her children, or there is a pattern of misconduct by the child, then the Member's household will be subject to termination of their membership/eviction.

 109.10- Derogatory or rude behavior by Members may be in violation of the Occupancy Agreement and subject the family to loss of membership/eviction.

109.11- Loitering or congregation in common areas is prohibited.

## Section 110- Improvements

110.1- All new equipment, alterations, or improvements to a unit must first be approved in writing by the Cooperative. Before starting an improvement or alteration, the Member must secure an alteration permit, which is available by contacting the office during business hours. Once the permit is received, and approved by the Board of Directors, the alteration or improvement may proceed. Members altering their units understand that upon vacating the unit they must return the unit back to its original condition if so required by the Cooperative. Persons with a handicap/disabled accommodation must request such accommodation to the Board of Directors in writing. They will be accommodated in accordance with the Cooperative's reasonable accommodation policy (see Membership Selection Plan, Attachment-Reasonable Accommodation Policy) and all applicable Federal, state, and local laws.

110.2- Wallpapering is allowed, provided that the paper is of the release type so that it may be easily removed from the wall upon vacating. Contact paper is prohibited as it is hard to remove and can damage the walls.

110.3- Pictures should be hung with the smallest nail allowed for the weight of the object.

110.4- No gate is allowed to attach to your patio fence, unless it is of the same design and material of the patio fence. Any variation from this requirement must be approved by the Board of Directors in writing. There should be nothing attached to the patio fences except closures permitted pursuant to these rules.

110.5- Members are not permitted to finish or seal any cabinets on the premises of the Cooperative.

**Section 111 Lawn, Landscaping, Litter, and Patios**

111.1- No vehicles are permitted on the grass in the community.

111.2- Trash should never be placed adjacent to the dumpsters.

111.3- Children are not allowed to bring trash to the dumpsters, unless they are large enough to reach the bins and place trash **inside** the dumpster.

111.4- Trash is to be placed in a **secured** trash bag before it is placed inside the dumpster.

111.5- No large items, such as furniture, appliances, etc. are allowed in, by, or upon the dumpsters. If such large items are to be thrown out, the member will check with the office for a designated spot where they can be placed. Continuous violation of this rule can result in eviction.

111.6- Members must maintain their patio areas in a decent, safe, and sanitary condition, including mowing of the grass. Failure to do so will result in a violation letter with a time to cure the default and continuous violations can result in eviction.

111.7- All windows are to have coverings that are uniform and hung properly. There shall be no sheets, newspaper, or shower curtains allowed at the windows or patio areas. All window coverings must appear from the outside of the unit to be white. Therefore all colored drapes must have white backings.

**Section 112- Pets**

112.1- Pets are permitted at the Cooperative premises at the sole discretion of the Board of Directors and Management. Only common household pets will be permitted at the Cooperative. The Cooperative reserves the right at any time to deny a pet permit for failure of the Member to register or remove a pet from the premises at the request of management or the Board of Directors. The member also risks removal of the pet or eviction if they refuse to abide by the Cooperative pet rules.

112.2- No dog may be housed at the Cooperative that exceeds 30 lbs. at maturity, or that have a vicious nature such as: Pit Bulls, Dobermans, German Shepherds, and Rottweilers.

112.3- All pets must be registered with the leasing office on an annual basis at dates specified by the Cooperative. Pets are initially to be registered upon move-in if the pet is obtained prior to or upon moving in to the Cooperative. Members not registering their pets at this time or at annual registration will be subject to removal of the pet and risk possible termination of their occupancy agreement. No pet deposit or registration fees are required at the present time.

112.4- Such registration shall include evidence and certification of immunization and current license with the appropriate city and/or county.

112.5- Pets must be kept on a leash at all times when outside the member's unit and the leash must not extended farther than six (6) feet in length.

112.6- The Member will be responsible to assure the Cooperative that the pet does not disturb other members of the Cooperative. Should warnings be issued to the Member by management for continuous disturbances, the Member will be asked to remove the pet permanently from the premises. Failure to comply could result in membership termination and eviction.

112.7- Should a pet destroy the Cooperative's property or another Member's property, the Member owning the pet will be responsible to pay for the cost of the damages to the injured party. If the Member owning the pet fails to reimburse the injured party for the damages or the pet continually causes damages, the Member must remove the pet from the Cooperative and/or face possible Membership termination or eviction.

112.8- Messes causes by pets will be immediately cleaned up by the owner. Messes are defined as defecation, garbage, destruction, etc. If the maintenance staff must clean up after the pet, a $5.00 per occurrence will be charged back to the Member for damages.

112.9- Leashes and chains shall not be attached to any Cooperative building or structure such as, but not limited to, down spouts, mail boxes, utility poles, back porches, patio fences, trees, etc.

112.10- Members who permit a health hazard in their units due to defecation or urination of their pets will be subject to immediate termination of membership and eviction.

112.11- Member agrees to remove a pet from the premises immediately if the pet threatens the health and safety of other Members within the community, their guests, or members of the staff.

112.12- All Members with pets are further required to sign a pet permit addendum, which will be available at the leasing office.

**Section 113- Property Damage**

113.1- Members are responsible to pay for the cost of any repairs due to damage caused to their unit by the Member, Member's Family, or any guests. Property destroyed by the Member, Member's family, or guest(s) will be chargeable back to the Member at the cost to repair the damage. Such damages include, but are not limited to torn or missing screens, broken windows, destroyed grass or lawn repairs from vehicles, etc.

113.2- Member is responsible to immediately report any damages to the leasing office.

113.3- Member is to immediately report to the leasing office any pests in or around their dwelling unit.  The leasing office will then schedule extermination for the dwelling unit.

**Section 114- Service Charge, Delivery of Telephones, and Satellite**

114.1- No utility company, including cable or satellite is permitted to install or conduct service unless someone responsible is present in your dwelling unit.

114.2- No additional telephone and/or cable jacks or satellite dishes may be installed without the written consent of management and Board of Directors (see alteration permit).

114.3- Satellite dishes can only be installed on poles inserted into the ground in your dwelling unit area.  No common areas will be used to install the satellite and attaching to any part of the building or patio fence is prohibited.

114.3- The Cooperative is not responsible for, nor will assume the duty of accepting any home deliveries.

**Section 115- Community Building**

115.1- The community building may be used for activities approved by the Cooperative and may only be utilized on a reservation basis.

115.2- The community room may be reserved for private parties for a refundable deposit of $75.00 and a non-refundable fee of $35.00.  The deposit and reservation fee must be paid to the leasing office no later than the last business day prior to the reservation date.  These fees must be paid separately in order to refund the deposit back to the Member if there are no damages.  Keys will be given to the lessee at the time the fees are paid.

115.3- The Cooperative reserves the right to refuse anyone admittance into the community building or grant a reservation to anyone for specific reason(s).

115.4- In no event will the community room be reserved or utilized unless the person reserving the room has signed a written agreement on terms and conditions required by the Cooperative.  The person reserving the community room must be present at the event.

**Section 116- Complaints**

116.1- All complaints must be submitted in writing to the leasing office or the Board of Directors so that management can properly respond.

116.2- Under no circumstances will a complaint be taken orally unless it is followed up by a written complaint.

**Section 117- Housing Information**

All questions and information concerning housing are referred to Grandville Cooperative's leasing office located at 3520 Calhoun Street Indianapolis, In 46203 (317) 782- between the hours of 9:00 am-12:00 p.m. and 1:00 p.m. until 6:00 p.m. Monday through Friday.  You may also contact the current management agent, Kirkpatrick Management, at 5702 Kirkpatrick Way Indianapolis, IN 46220 (317) 570-4358.

**Section 118- Condition of Dwelling Unit**

118.1- Members must maintain their units in a decent, safe, and sanitary condition at all times.  Failure to comply will be grounds for termination of assistance, membership, and possible eviction.

**Section 119- Energy Conservation**

119.1- As set forth previously, each Member shall attempt to conserve the utilization of gas during the winter season.  The Member shall immediately notify the Cooperative in the event of water drainage from any plumbing facility or toilets that run indefinitely. Failure to protect the Cooperative from such over usage may be grounds for eviction and loss of membership.

**Section 120- Unit Transfers**

120.1- For over-housed or under-housed Members receiving Section 8 assistance, the transfer requirements are contained in the Occupancy Agreement and follow HUD guidelines.  For all other Members, the Cooperative will consider requests for transfers from Members in good standing who want and need different size or type units.  A Member must fulfill one year of occupancy before a transfer request is considered, unless they have a change in family composition.

120.2- Members in good standing are those who have demonstrated good payment records, take care of their dwelling unit and Cooperative property, and have abided by the terms of their Occupancy Agreement and these Rules and Regulations.

120.3- If the transfer is at the Member's request, a $50.00 transfer fee will be assessed for those transferring on-site.  This fee will not be charged to Members who are required to transfer by the Cooperative or have a change in family composition, which requires them to transfer to a larger or smaller unit.

120.4- A Member requesting a transfer may refuse a unit offered to them a maximum of two times or they will be removed from the transfer list.  If they desire to transfer at a later time, they are required to fill out a new transfer request and are placed on the transfer list by the date of their new request.

### Section 121- Insurance

121.1- Your personal belongings are not insured by Grandville Cooperative, Inc.  It is STRONGLY RECOMMENDED that you secure renter's insurance, which is obtainable for personal belongings at a reasonable cost from most insurance agents.

### Section 122- Violation Procedures

122.1- Members will abide by all the Rules and Regulations approved by the Board of Directors.

122.2- Violation of any Rules and Regulations by any Member may result in the termination of the offending or responsible Member's Occupancy Agreement and Membership rights.

122.3- These Rules and Regulations may be added to or amended from time to time by the Board of Directors, and such amendments and additions will become effective 30 days following notice to Members.  Members are expected to read any literature as may be sent out to the Cooperative explaining any additions or amendments in the Rules and Regulations.

The Member(s) agrees to abide by and understands all Rules and Regulations as may be amended from time to time and contained herein, and acknowledges by signature below receipt of a copy of them.


Member _____   Date: _____

Member _____   Date: _____

Member _____   Date: _____


### Acknowledgement by Grandville Cooperative, Inc.

By: _____   Date: _____
        Its Authorized Agent

*639 - 2591*



## SPRING & SUMMER RULES & REGULATIONS

Please understand that by complying with these "Rules and Regulations" you will only ensure that you and your family have a safe and enjoyable spring & summer.

No children shall play in the Tot Land/outside without proper supervision. **No loud music**- music should be played for your ears only.  There should be **no ball playing** in the grass, parking lot, or the playground areas.  Please utilize the Bethel Park.

The Tot Land is reserved for youth 14 years of age and under.

No children should be in the Tot Land after dark or common areas after 9:00 p.m.

Parents, children are your responsibility and should be supervised.  Parents beware Security has been advised to stop and id anyone walking through Grandville Cooperative. Visitors should know exactly where they are going, and your company is your responsibility.  You will be held liable for any disturbances.

NO fireworks to be let off except on July 4th and that will be in designated areas ONLY.  We will post where these areas will be at a later date.

When eating and/or drinking in the Tot Land or common areas please dispose of any wrappings, bottles, cups, etc. in the garbage bins.



EXHIBIT
4

3520 Calhoun Street  Indianapolis, IN 46203  (317) 783-7672  FAX (317) 782-4318

There is to be NO grilling in the front of your units. Patios are the only place permitted for grilling. No disposing of barbeque grill charcoal bits unless they are in a garbage bag. Dispose of the bits only after they have cooled off.

No chalk writing on the Property's walls or sidewalks it is considered graffiti.

No swimming pools are to be used in the front of your unit. Small wading pools are acceptable for your children in your patio area ONLY.

Any windows broken by children will be charged to the parent or host of the child.

When disposing of your garbage, make sure it is placed **INSIDE** not on top or beside the dumpster. You are not permitted to sit your trash outside of your unit, even if it is just for a few minutes. Trash should be disposed of as soon as you leave your unit.

There is to be NO FEEDING your animals or strays in the common areas this includes front areas of your unit.

There is to be no sitting, standing, or congregating in the common areas. This includes but not limited to parking areas, under trees, or in front of units. No sitting on or standing on the electrical boxes (green boxes with writing on them). Please, use your patio to entertain.

Members are responsible for the supervision of the children visiting in addition to their own.

Furthermore, if a Member fails to report visitors staying as guests in their unit, the Member will be considered non-compliant due to unauthorized persons in unit and management will proceed with legal action.

If any damages or problems are caused by the guest of a Member, that Member will be held liable.

There should be no walking, playing, or bike riding on the grass or in between cars. This will ensure that our lawn will remain well manicured and healthy. We go through great expense to make our community look attractive.

Small children should not be riding bikes in the parking lot unless they are supervised.

You are responsible for the upkeep of your patio areas. Due to the price of gas the cost for renting the Lawn Mower is $3.00.

Any member or Member of the household, a guest or other person under the Member's control shall NOT engage in ay criminal or gang activity including drug related criminal activity, on or near the GRANDVILLE COOPERATIVE. Drug related criminal activity means the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute or use of any controlled substance as defined in Section 102, of the Controlled Substance Act (21 U.S.C. 802).

All violations mentioned above will constitute a NON-COMPLIANCE of your Occupancy Agreement and can lead to termination. Consider this your 1st warning.

Thank you,

Marlon L. Harvey
Site Manager
Grandville Cooperative, Inc



February 22, 2013

**Attention Members:**

We would like for all members of Grandville Cooperative to be aware of the Rules and Regulations that we have recently noticed are being violated on a regular basis.

Please read below:

1. **All Christmas decoration need to removed**, now that the holiday season is over. Remove items from the windows and doors. Be very careful to make sure that you do not cause any damage when removing the items.
2. **All toys, chairs, tables, bikes, lawn equipment, etc. are to be placed inside your back patio only.** We do not allow for chairs or other items to be placed on your front stoop.
3. **It is a requirement for all units to have white blinds properly hung at all windows and patio doors.** Failure to do so will result in maintenance doing so for you, with a maintenance/parts fee.
4. Please be aware with the spring coming that **we do not allow for children to play in the front of the buildings in the grass.** Children are to play in the patios and/or open breeze ways between the fences in the back of the buildings. Children are to ride bikes on the sidewalks only.
5. **Do not walk across the grass when going to and from your unit**. We at Grandville take great pride in the appearance of our property and need for each and every member to do the same. Please make your guests aware of this regulation.

Thank you very much for your cooperation in these matters. If you have any questions or concerns, please contact the office at 317-783-7672.

Sincerely,

Deiona Simpson
Property Manager
Grandville Cooperative, Inc.



3520 Calhoun Street  Indianapolis, IN 46203  (317) 783-7672  FAX (317) 782-4318




Grandville
Cooperative
3520
Calhoun St.
Indianapolis,
IN. 46203
(317)783-7672

# Grandville News

Volume 6, Issue 1                                                                        May 2014

## THE WARM WEATHER HAS ARRIVED!

Parents, it is essential that you be aware of your child's whereabouts! Children are not allowed to play in front of their units. There are a lot of kids trying to ride their bikes, big wheels and other motorized toys on the sidewalks and in the parking lots mostly unsupervised all times of the day. This is unsafe and not allowed! You must use the overflow parking lot located off of Van Buren Street. You, the parents can organize a time to block off the lot daily for the children. It means volunteering your time and organizing others so that your children can have a safe place to play! It is not the responsibility of other Grandville members to have to walk around your children's bikes and toys on the sidewalks, in the lawns and parking lots! Reminder: No one is allowed in the lawn, it has been chemically treated to preserve its beauty! Consider this an official notice members, this will be considered a violation, repeated violations can result in termination of your membership. Thank you for your cooperation with this in advance.

### Special points of interest:

- Child Safety
- Beautification Contest
- Jr. Gardeners
- Committees
- Fundraisers

## GET YOUR GREEN ON!

Grandville is sponsoring a contest for the most beautiful Flower bed or functional Garden. The winners will receive a fifty dollar gift card from Lowes!

The Grandville Junior Gardeners have two flower boxes they will be decorating in Van Buren Ct., they are also getting ready to start planting tomatoes and a few other surprise veggies for the upcoming Fall festival. This program is designed to help our children appreciate their grounds where they live. If we teach them now, we won't have to constantly remind them why they can't play in the grass, why they can't trash the grounds, etc. Let's work together to instill some pride in our young people. Sign up for the gardening project is Friday the 16th at 5:00 p.m. at the Resource Center.

## GYG  CARWASH FUNDRAISER

The Grandville Youth Group, the Grandville Steppers and Glam Girls are having a Carwash/ Bar-B-Q fundraising event on Saturday, May 31, 20014 at noon. Come join the fun! Volunteer today and get a free T-Shirt for participating! Volunteers are needed!

## PLANNING COMMITTEE NEWS

The Grandville Planning Committee is looking for those who can sew. We have requests for a sewing club. Anyone who has a sewing machine or knowledge of sewing or other crafts, give us a call! We have several onboard now but we would like more participation from the community! Contact the office at 783-7672 for more info!

We have a lunch meeting every third Wednesday of the month, you too can be a part of this committee! Everyone is welcome! Bring your favorite dish and coupons!

Chairman– V. Petrie


EXHIBIT
6


EQUAL HOUSING
OPPORTUNITY

## GRANDVILLE IS ON THE MOVE

We now have a new maintenance truck which will help cut down on expenses. Hooray for Grandville!!



## *Our Maintenance Supervisor Tips*

### Washing machines:

- Please do not overload the washing machines.
- The machines are not designed for oversized loads, comforters, or rugs.
- Please be advised that broken machines will not be replaced if it has been determined that the malfunctions are due to operator error.

### Dryers:

- Please make sure to empty dryer vents after each load. Excess lint can build up and cause the dryer to stop working.

### Sinks:

- Do not drain grease into the garbage disposals. They were not designed to handle grease.
- Call in leaks as soon as you notice a problem. That helps prevent further damage.

### Toilets:

- Please be careful not to flush foreign products other than toilet paper down the toilets as they cause water mains to get backed up. Currently the Coop pays the water bill for all members, however the rise in the water usage and the numerous backups could result in all members paying their own water bills.

### Work Orders:

- It is important to call in work orders as soon as a problem is identified.
- Items may be still under warranty, time could make a big difference.
- Not informing maintenance of issues in units could result in members being responsible for the cost of repair.

- Patio Grass & Trash

- A courtesy to the older seniors has been to cut their grass and other light errands at the request of the Senior Services Committee.

- Due to time restraints, the committee is organizing a group of teen volunteers to help with this matter. We will no longer have our maintenance to help with this task unless its deemed an emergency. If you are a teen, male or female and you want to help, please contact the office and leave a contact number, 783-7672.

2

# Committees

- Planning committee is planning for the next meeting. Wednesday brunch will resume the 3rd Wednesday of each month @12 noon. Come share ideas and see what they have planned for the holidays!

- Committee and Board members training on demand, as needed. Come join us. Your talents and abilities are needed, and will be appreciated. Contact the office if interested.

- Youth leadership committee is looking for kids interested in having fun while learning. All kids are welcome.

## BOARD MEMBERS

Karen Mitchell : President
Karen Franklin : Vice– President
Krystal Williams : Secretary
Levia Heffner : Treasurer
Member at Large seat open

# Words from the President
### Staying The Course

Grandville has always been a thriving Cooperative and Community to live and grow. In order to continue this path, the members have to appreciate and commit to helping to stay the course. We've come a long way on improvements. Sure, there's more to be done and we're getting there. But, if we have to keep replacing things due to the negligence of some, it slows progress. We wish there was room for a playground but there isn't. Our kids out grew Totland. It stayed in disarray and unusable for those it was designed for, TOTS. We are continuing to work toward some solution. Meanwhile please utilize the Bethel Family Center.



# Requests from the office staff...

Please members, when calling the office, to be courteous as we are to you. We receive many calls throughout the day and they are all important.

Also, if and when you choose to move on from Grandville please turn in a formal 30-day notice thirty days prior to move out, and return keys to the unit. If you fail to do so you will incur charges for rent and lock change fee.

Carrying charges are due on the 1st of each month and late after the 5th, on the 6th a late fee of 35.00 will be assessed!

## OFFICE & GRANDVILLE STAFF

Heather Pickens : Property Manager

Destini Kelly : Leasing Consultant
Billy Kersey : Maintenance Supervisor
Robert Dew : Maintenance Technician
Victor Eanes: Grounds Man

Grandville News

3

## LOL Corner :)

Q.)Why do potatoes make good detectives?
A.)Because they keep their eyes peeled.

Q.)What do you call a stolen yam?
A.)A hot potato.



## Calling All Boys and Girls .......

Does your child like to dance? Well have them tryout for the Grandville Glamour Girls/ Grandville Junior Steppers!! Tryouts will begin Saturday June 14, 2014 @ 12:00 sharp!! Trained instructor will be brought in to help with the choreography to make it the best team EVER!! The groups will perform at the Annual Fall Festival Saturday, August 2, 2014. No newcomers accepted after June 28, 2014.

(Note: Contact L. Heffner for more information.)

## Kid Chefs Corner!

### Peanut Butter Hot Dog

Ingredients (Serves 2)

2 tablespoons peanut butter
2 slices whole wheat bread
1 banana, peeled

Directions

Spread a tablespoon of peanut butter onto one side of each slice of bread. Break the banana into two pieces, and place one half onto the center of each peanut buttered bread slice. Wrap the bread around each banana and eat like a hot dog!







4

# SUMMER RULES & REGULATIONS

Parents, children are your responsibility and should be supervised. No children should be in the common areas after 9:00 p.m.

No fireworks to be let off except on July 4th and that will be in designated areas ONLY.

There is to be **NO** grilling and swimming pools in the front of your units. Patios are the only place permitted for grilling and pools.

No chalk "artwork" on the Property's walls or sidewalks it is considered graffiti.

When disposing of your garbage, make sure it is not placed on top or beside the dumpster but inside.

There is to be no sitting, standing, or congregating in the common areas. This includes but is not limited to parking areas, under trees, or in front of units. No sitting or standing on the utility boxes. Please, use your patio to entertain.

There should not be any playing, or bike riding on the grass or in between cars in the parking area. This will help ensure the safety of your child and a healthy our lawn. Please utilize the Bethel Park.

You are responsible for the upkeep of your patio areas. Lawn mowers and weed eaters are available for rent at the office.

All violations mentioned above will constitute NON-COMPLIANCE of your Occupancy Agreement and can result in termination.

Please understand that by complying with these "Rules and Regulations" you will only ensure that you and your family have a safe and enjoyable summer.

Have a Safe and Fun Summer
Grandville Cooperative Management



Grandville Cooperative, Inc.
3520 Calhoun Street
Indianapolis, IN 46203
Phone: (317) 783-7672
Fax: (317) 782-4318
TTY: 711

May 27, 2015

To:     Members of Grandville Housing Cooperative

Re:     Unsupervised children & Maintaining your Back Patio

Dear Members,

This letter serves as a reminder to all of the households at Grandville Cooperative that children under the age of 10 are not to be outside on the grounds at anytime without supervisor. If we witness your child or children unsupervised you will be sent a letter. If the behavior continues, your household may be put on a final warning before eviction. This is a violation of the cooperative rules and regulations. If you do not follow the rules and regulations your occupancy at Grandville Cooperative will be terminated.

Please note it's each member's responsibility to take care of their back yard area; this includes cutting your grass. If maintenance cuts your backyard you will be charged $25 each time it is cut. If you would like maintenance to cut your yard, contact the office and they will put it on a work order. The $25 needs to be paid in advance before your grass will be cut. This service is not provided to ANY member free of charge.

Employees of Grandville Cooperative are not allowed to do this work after hours. However, the office does maintain a list of residents who are interested in doing this service for a charge. We will put you in touch with someone who is interested in doing this work but please note that these people are not employees or contractors of Grandville Cooperative. We are not responsible for their work.

If you have any questions, please contact the office. We appreciate your cooperation in helping to keep our children safe at all times.

Sincerely,

Leda Grace
Property Manager

EXHIBIT
8

**CERTIFICATE OF SERVICE**

On April 13, 2016, I served all parties by their attorneys' of record by filing with the Court's CM/ECF system this **[Proposed] Second Amended Complaint**. The CM/ECF system delivered the document by email to:

Thomas E. Crishon
Melissa L. Keyes
INDIANA PROTECTION AND ADVOCACY SERVICES
4701 N. Keystone Ave., Suite 222
Indianapolis, IN 46205
tcrishon@ipas.IN.gov
mkeyes@ipas.IN.gov

Christopher Brancart
BRANCART & BRANCART
P.O. Box 686
Pescadero, CA 94060
cbrancart@brancart.com

Thomas Kayes
BRANCART & BRANCART
77 West Washington Street, Suite 1313
Chicago, IL 60602
tkayes@brancart.com

Brian P. Nally
REMINGER CO., L.P.A.
101 West Prospect Avenue
Suite 1400
Cleveland, OH 44115
Tel: (216) 430-2106
Fax: (216) 687-1841
bnally@reminger.com

Lyndsay I. Ignasiak
REMINGER CO., L.P.A.
Three Parkwood
450 East 96th Street, Suite 150
Indianapolis, IN 46240
Tel: (317) 853-7372
Fax: (317) 663-8580
lignasiak@reminger.com

/s/ Thomas Kayes