**U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC., et al. | ) ) | CASE NO:   1:16-cv-00300-LJM-DML |
| | ) | |
| PLAINTIFFS, | ) | JUDGE: LARRY J. MCKINNEY |
| | ) | |
| | ) | MAGISTRATE JUDGE: DEBRA |
| vs. | ) | McVICKER LYNCH |
| | ) | |
| GRANDVILLE COOPERATIVE, INC., et al. | ) ) | |
| | ) | |
| DEFENDANTS. | ) | |

---

### DEFENDANTS' BRIEF IN SUPPORT OF THEIR
### MOTION FOR JUDGMENT ON THE PLEADINGS

---

This is a housing discrimination case. The Complaint assert claims against Grandville (an Indianapolis housing cooperative), Kirkpatrick (Grandville's property management company), and Karen Mitchell (a member of the Grandville Board of Directors) for: (1) violation of the Fair Housing Act, 42 U.S.C. § 3601, et seq.; (2) violation of the Rehabilitation Act, 29 U.S.C. § 794; (3) violation of the Indiana Fair Housing Act, Ind. Code § 22-9-5; and (4) negligence.

Specifically, the McFarland Plaintiffs[1] assert a disability discrimination claim and allege that "the Defendants" discriminated against individuals with disabilities because they rejected Ms. McFarland and Ms. Morton's housing application. (Third Am. Compl. ¶ 1.)  The Adams Plaintiffs[2] assert a familial discrimination claim and argue that Defendants imposed unreasonable restrictions on children's use of Grandville's common areas through the following rules:

1. "Children under the age of 10 are not to be outside on the grounds at any time without a supervisor"

2. "No children should be in the common areas after 9:00 p.m."

---

[1] Defined as Sharna McFarland, Virginia Morton, and the Fair Housing Center of Central Indiana, Inc.

[2] Defined as Lindsay Adams and the Fair Housing Center of Central Indiana, Inc.

3.   "Children are not allowed to play in front of their units."

(Third Am. Compl. ¶¶ 2, 56.) And the Plaintiffs all assert a negligence claim against the Defendants premised on theory that the Defendants owe members of the public, housing applicants, or a tenant a duty to comply with the Fair Housing Act or similar rules or regulations.

For the reasons set forth below, Plaintiffs' Third Amended Complaint (the "Complaint") should be dismissed.

## I.   FACTS

### A.   The Defendants

Grandville is a non-profit housing cooperative located on the south-side of Indianapolis. (Third Am. Compl. ¶¶ 10, 16.)  It is a 156-unit housing complex that was constructed prior to 1988[3] and provides housing to a diverse group of residents, including low income individuals and families who utilize Section 8 assistance. (*Id.* at ¶ 17; Answer ¶ 16.) Each resident of the cooperative owns one share, and has one vote. The residents also elect a five-person Board of Directors. (*Id.* at ¶¶ 18 & 19.) At all relevant times, Karen Mitchell was the President of the Board. (*Id.* at ¶ 37.)

Kirkpatrick is a property management corporation organized under the laws of Indiana. (Third Am. Compl. ¶¶ 13 & 14.) Kirkpatrick manages dwellings throughout the Midwest. (*Id.* at ¶ 21.) It provides services to the Grandville board and residents and is responsible for guiding Grandville's board and staff in compliance with fair housing laws, financial management and reporting. (*Id.* at ¶ 23.) Aside from the foregoing description, Plaintiffs' Complaint is devoid of any allegations that support their claims that Kirkpatrick violated the Fair Housing Act, Rehabilitation Act, or Indiana Fair Housing Act. Instead, Kirkpatrick is merely lumped together into allegations against

---

[3] Under the Federal Fair Housing Act, 42 U.S.C. § 3604(f)(3)(C), only buildings constructed "30 months after September 13, 1988 [March 13, 1991]" need to be designed and constructed so that, *inter alia*, "the public use and common portions of such dwellings are readily accessible to and usable by handicapped persons." Because Grandville was constructed prior to 1988, it is excluded from these requirements.

"Defendants" in general, without articulating any particular alleged wrongdoing against Kirkpatrick in particular.

Karen Mitchell was at all times President of the Grandville Board of Directors, *a voluntary and unpaid position*. (*Id.* at ¶ 12, 37.) Her involvement with the McFarland Plaintiffs relates to a single event—she attended the August 5, 2015 meeting.  (*Id.* at ¶¶ 37-39.)  Her involvement with the Adams Plaintiffs relates to two events—she allegedly yelled at children she saw breaking rules, and allegedly told Ms. Adams that she needed to supervise her child more closely while riding a bike on the sidewalk. (*Id.* at ¶¶ 49(c), 58.) Both acts were done within the course and scope of Ms. Mitchell's actual or apparent authority as President of the Grandville Board of Directors. Furthermore, neither act is sufficient to state a valid claim against Ms. Mitchell in her individual capacity. (*Id.* at ¶ 15.)

### B.  The McFarland Plaintiffs

In 2012, Ms. Morton applied to Grandville for housing. (Answer ¶ 26 & Ex. A, at p. 2 ) She identified herself as disabled and stated that she *required* a handicap accessible unit. (*Id.*) After abandoning her application, her daughter, Ms. McFarland, submitted her own application almost two years later on December 8, 2014. (*Id.* ¶ 29 & Exhibit B.) Specifically, Ms. McFarland applied for a three-bedroom, two-story townhome and did *not* seek a mobility accessible unit—i.e., a handicap accessible unit. (*Id.* ¶¶ 29, 32 & Ex. B, at p. 12.) Ms. McFarland listed herself as the only applicant and did not list her mother. (*Id.*) Ms. Morton did not sign the original application.

Around July 11, 2015, Ms. McFarland visited the Grandville office and, for the first time, added her mother to her application as a co-applicant. (Third Am. Compl. ¶ 32; Answer ¶¶ 29, 32.) She did not, however, change the type of unit she was pursuing, and continued to seek a unit that was *not* handicap accessible. (*Id.*) Ms. Morton did not sign the updated application. (*Id.*) Ms. McFarland then attended the August 5, 2015 meeting and volunteered information to the Board of Directors

about her mother's disability and advised the Board that her mother could not climb stairs. (Third Am. Compl. ¶ 38.) Ms. Morton did not attend this meeting.

With only this information available to it, Grandville issued the August 5, 2015 letter stating that it had to deny Ms. McFarland's application because Grandville was not handicap accessible and did not have a unit available that could accommodate everyone in the household. (*Id.* at ¶ 40.) Grandville advised Ms. McFarland that she could call or write the Board of Directors to discuss the decision, but she ultimately did neither. (*Id.* at Ex. 2.) Although Grandville advised Ms. McFarland that persons with disabilities could request reasonable accommodations, she never made any such requests. (*Id.* at Ex. 2.) Accepting these allegations as true for purposes of the instant motion, Plaintiffs fail to state a claim for disability discrimination.

### C.  The Adams Plaintiffs

Lindsay Adams first became a resident of Grandville in November, 2013.  (Third Am. Compl. ¶ 54.) The Adams Plaintiffs acknowledge that children are free to play in the grass area behind each unit (in what is referred to as the back patios) and in the open breeze ways between the fences in the back of the buildings. Children are also free to ride bikes and play throughout the complex, including at an overflow parking lot specifically earmarked by Grandville to provide an *additional* place for children to play. (Third Am. Compl. ¶ 49(d), Ex. 5, Ex. 6.) But the Adams Plaintiffs claim that Grandville imposes the following discriminatory and unreasonable restrictions on children through the rules identified above.

II.   **LEGAL ANALYSIS**

A.   **Standard of Review**

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment after the pleadings are closed, but early enough not to delay trial.[4] *Ill. Farmers Ins. Co. v. Phelps*, No. 1:14-cv-02018-SEB-TAB, 2016 U.S. Dist. LEXIS 40071, *5 (S.D. Ind. Mar. 18, 2016) (Barker, J.)  Courts review motions for judgment on the pleadings under the same standard by which they review motions to dismiss for failure to state a claim under Rule 12(b)(6).  *Id.*, citing *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).  In determining the sufficiency of a claim under this standard, the court considers all allegations in the complaint to be true and draws such reasonable inferences as required in the nonmovant's favor.  *Phelps*, 2016 U.S. Dist. LEXIS 40071, *5, citing *Jacobs v. City of Chi.*, 215 F.3d 758, 765 (7th Cir. 2000).  Federal Rule of Civil Procedure 8(a) applies, with several enumerated exceptions, to all civil claims, and it establishes a liberal pleading regime in which a plaintiff must provide only a "short and plain statement of the claim showing that [he] is entitled to relief," Fed. R. Civ. Pro. 8(a)(2).  *Id.*  This reflects the modern policy judgment that claims should be "determined on their merits rather than through missteps in pleading."  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir. 2007) (citing 2 James W. Moore, et al., Moore's Federal Practice § 8.04 (3d ed. 2006)).  A pleading satisfies the core requirement of fairness to the defendant so long as it provides "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court introduced a more stringent formulation of the pleading

---

[4] Defendants' motion is timely and will not delay trial.  Defendants filed their Answer to the Third Amended Complaint on September 29, 2016, less than one month ago, and trial is not scheduled to occur for another year, on October 16, 2017.

requirements under Rule 8. *Phelps*, 2016 U.S. Dist. LEXIS 40071, *5. In addition to providing fair notice to a defendant, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility requires more than labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The plausibility of a complaint depends upon the context in which the allegations are situated, and turns on more than the pleadings' level of factual specificity; the same factually sparse pleading could be fantastic and unrealistic in one setting and entirely plausible in another. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 370 (M.D. Pa. 2008). Although *Twombly* and *Iqbal* do not overturn the fundamental principle of liberality embodied in Rule 8, a plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief. *United States v. City of Evansville*, No. 3:09-cv-128-WTL-WGH, 2011 U.S. Dist. LEXIS 1439, 2011 WL 52467, at *1 (S.D. Ind. Jan. 8, 2011) (quoting *Tamayo*, 526 F.3d at 1083).

## B. Plaintiffs Have Failed to State a Valid Claim for Negligence.

Plaintiffs assert a negligence claim against all Defendants for the alleged failure to train, monitor, and supervise Karen Mitchell and Camille Mitchell, and to ensure their compliance with the fair housing statutes and applicable regulations. (Third Am. Compl. ¶¶ 90 & 91.) To establish such a claim, Plaintiffs must show: "(1) a duty of care owed by an employer to a third person; (2) breach of that duty; and (3) injury to the third person proximately caused by the employer's breach." *Sims v. Humane Society of St. Joseph Cnty. Ind., Inc.*, 758 F. Supp. 2d 737, 750 (N.D. Ind. 2010). "Absent a duty, there can be no breach, and therefore, no recovery for the plaintiff in negligence." *Vaughn v. Daniels*

*Co. (West Virginia), Inc.*, 841 N.E.2d 1133, 1143 (Ind. 2006). The determination of whether a duty exists is generally an issue of law to be decided by the court. *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003). To decide whether a duty exists, a three-part balancing test is utilized by courts. *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011) (citing *Kephart*, 934 N.E.2d at 1123; *Sharp*, 790 N.E.2d at 465.) This test, first enunciated in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991), balances three factors: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Id.* at 995.

The Complaint fails to allege—even in a conclusory fashion—that Defendants owed Plaintiffs a duty of care. (Third Am. Compl. ¶¶ 90 & 91). In fact, no such duty exists under Indiana law. No Indiana case (state or federal) has recognized a duty owed by a property management company (i.e., Kirkpatrick), housing cooperative (i.e., Grandville), or the President of the Board of Directors (i.e., Karen Mitchell) to housing applicants (Ms. McFarland and Ms. Morton), resident (Ms. Adams), or private, non-profit corporations (Fair Housing Center of Central Indiana). And no Indiana case (state or federal) has recognized a duty owed by a property management company (i.e., Kirkpatrick), housing cooperative (i.e., Grandville), or the President of the Board of Directors (i.e., Karen Mitchell) to society in general to ensure compliance with the federal Fair Housing Act, the Rehabilitation Act, the Indiana Fair Housing Act, or "applicable regulations." (*Id.* ¶ 91.)

Courts outside this jurisdiction have rejected attempts to assert a negligence claim premised on defendant's failure to train/monitor/supervise employees on the requirements of the Fair Housing Act. *See Corley v. Spitzer,* No. 11-cv-9044, 2015 U.S. Dist. LEXIS 2022, *21, n.5 (S.D.N.Y. Jan. 7, 2015) (dismissing negligence claim against property and property management company in FHA case, concluding defendants owed plaintiffs no legal duty); *Fair Hous. Council of Or. v. Brookside Vill. Owners Ass'n*, No. 3:08-cv-3127-ST, 2012 U.S. Dist. LEXIS 188004, at *79-80 (D. Ore. Oct. 19, 2012) (concluding that the FHA "does not create a standard of care applicable to negligence claims"); *Hand*

*v. Gilbank*, 752 N.Y.S.2d 501, 502, (N.Y. Sup. Ct. 2002) (concluding that the FHAA "was not intended to create a standard of care in negligence litigation."); *Matarese v. Archstone Pentagon City*, 761 F. Supp. 2d 346, 365 (E.D. Va. 2011) (granting summary judgment on negligence claim based on a failure to train personnel on the FHAA); *see also Corley v. Jahr*, No. 11-cv-9044, 2014 U.S. Dist. LEXIS 25489, *22-28 (S.D.N.Y. Feb. 10, 2014) (dismissing claim for negligent failure to train and supervise, and a claim that the defendant acted negligently in failing to ensure compliance with HUD and other various regulations, concluding that no duty existed).

Courts within this jurisdiction have dismissed similar negligence claims in the context of discrimination claims under Title VII. *See e.g., Avila v. U.S. Steel Corp. (EC Tin)*, No. 2:08-CV-356-PRC, 2010 WL 2710641, *29 (N.D. Ind. July 6, 2010); *Kpotufe v. J.B. Hunt Transp., Inc.*, 1:10-CV-0539-RLY-MJD, 2011 WL 6092159, *6 (S.D. Ind. Dec. 6, 2011). Simply put, there is no basis in law to support a duty on behalf of Defendants relevant to the training, monitoring, and supervising individuals for their compliance under the Fair Housing Act. And because there is no duty, Plaintiffs' negligence claim fails as a matter of law and Count IV of the Complaint should be dismissed.

### C. Plaintiffs Failed to State a Valid Claim against Karen Mitchell.

Plaintiffs raise the following allegations against Ms. Mitchell: (1) she is the elected president of Grandville's Board of Directors (Third Am. Compl. ¶ 12); (2) she was present at the August 5, 2015 meeting with McFarland along with two other members of the Grandville Board of Directors (*id.* ¶ 37); (3) she told McFarland that the August 5, 2015 meeting was not a New Member Orientation but was instead a "Pre-Interview" meeting (*id.* ¶ 39); (4) at an unknown time and place she allegedly told her daughter Tia that she rejected the applications of Ms. McFarland and Ms. Morton "because Morton needed a hospital bed and planned to have the hospital bed in the living room," an arrangement which Ms. Mitchell allegedly described as "tacky" (*id.* ¶¶ 66 & 67); (5) at an unknown time and place she allegedly asked maintenance employee, Bill Kersey, what would need to be done if

a quadriplegic individual moved into the property (*Id.* ¶¶ 71 & 72); and (6) she yelled at children breaking Grandville's rules (*Id.* ¶¶ 49(c) & 73).

Generally, a corporation and its stockholders—like Grandville and Ms. Mitchell—are deemed separate entities, and it takes an "exceptional circumstance in order to justify the disregard of the corporate identity." *Clarke v. Universal Builders*, 409 F. Supp. 1274, 1281 (N.D. Ill. 1976). In *Clarke*, the court found that "exceptional circumstances" applied where the plaintiff alleged that four corporate shareholders of a *closely held corporation* aided and conspired with the corporate defendants to deprive the plaintiffs of their civil rights. *Clarke*, 409 F. Supp. at 1281. The court found that the corporation was merely used as a vehicle by the owners to violate the civil rights of others. *Id.* Similarly, in *City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.*, 982 F.2d 1086, 1098 (7th Cir. 1992), the court found that the sole owner/chief executive officer of a corporation was personally liable for violating the FHA because he supervised the day-to-day operations of the corporation and its agents.

As discussed above and as outlined in the pleadings, the facts and reasoning in *Clarke* and *City of Chicago* do not exist here. Ms. Mitchell is not the sole owner of Grandville, nor is she a person with exclusive authority over the operations of Grandville. Ms. Mitchell, like "each member of the cooperative owns one share and has one vote in the cooperative" and she is only one of four members of the Grandville Board of Directors. (Third Am. Compl. ¶¶ 16, 37.) Grandville is not a closely held corporation and Ms. Mitchell is one of many owners with an equal share in the cooperative, and she is not in a position to use Grandville as a mere vehicle of her will. Accordingly, the allegations in the Complaint do not rise to level to establish individual liability against Ms. Mitchell, as they do they constitute "exceptional circumstances" such that individual liability would be appropriate.

While Plaintiffs' more recent contentions regarding alleged conversations between Ms. Mitchell, Tia Mitchell, and Mr. Kersey are more inflammatory than earlier allegations, even if accepted as true, they are no less helpful to plausibly allege individual liability against Ms. Mitchell. First, there

is no foundation as to time and place for either conversation, and the Complaint lacks the necessary factual information to satisfy the pleading standard. Moreover, Ms. Mitchell is one of many individuals on the Grandville Board of Directors, and the Board of Directors—as a group—makes decisions for the cooperative. (*See* Third Am. Compl. ¶¶ 19.) The Complaint improperly seeks to hold Ms. Mitchell individually responsible for the decision of an entire elected body.

Additionally, Plaintiffs' state law claims, at a minimum, should be dismissed because Ms. Mitchell is immune from liability under Indiana's Nonprofit Corporations Act. The Nonprofit Corporations Act, Ind. Code § 23-17-13-1, immunizes volunteer directors, like Karen Mitchell, from civil liability for an action taken in her capacity as a director, or for failure to take an action. *Rodriguez v. Tech Credit Union Corp.*, 824 N.E.2d 442, 447 (Ind. Ct. App. 2005), citing Ind. Code § 23-17-13-1; *see also Hanson v. St. Luke's United Methodist Church*, 682 N.E.2d 1314, 1320 (Ind. Ct. App. 1997), aff'd in part, vacated in part on other grounds by 704 N.E.2d 1020 (Ind. 1998) (an officer of a corporation is generally not personally liable for the torts of the corporation or other officers or agents merely because of her office.) When officers or directors act in their official capacity as agents of the corporation, they act not as individuals but as the corporation itself. *Trail v. Boys & Girls Clubs*, 845 N.E.2d 130, 138 (Ind. 2006). A director can only be personally liable if she has not exercised business judgment in good faith, with the care of an ordinarily prudent person, in a manner reasonably believed to be in the best interests of the corporation, and the breach or failure to perform constitutes willful misconduct or recklessness. *Rodriguez*, 824 N.E.2d at 447, citing Ind. Code § 23-17-13-1. Because officers and directors of corporations possess immunity, to state a claim against the officers and directors of a corporation, plaintiffs must not only allege the basic elements of a claim, they must also allege some act by officers or directors that rests outside their authority as agents of the corporation. *Trail*, 845 N.E.2d at 138.

In this case, Plaintiffs specifically allege that Ms. Mitchell was acting within the course and scope of her authority, not outside of it. The Complaint states that Ms. Mitchell's actions were done "***within*** the course and scope of … her actual or apparent authority…" (Third Am. Compl. ¶ 15) (emphasis added.); *see e.g., Trail v. Boys & Girls Clubs*, 845 N.E.2d at 138-140 (dismissing claims asserted against the executive director of a not-for-profit corporation for actions done within the scope of his official duties); *Martin v. Platt*, 386 N.E.2d 1026, 1027-28 (Ind. Ct. App. 1979) (granting summary judgment for corporate officers, reasoning that conduct was within the scope of the officer's duties and thus immunized him from individual liability). Accordingly, Ms. Mitchell is entitled to judgment on the pleadings in this matter.

### D. Plaintiffs Have Failed to State a Valid Claim for Familial Status Discrimination.

Familial status discrimination is defined as "'discrimination against parents or other custodial persons domiciled with children under the age of 18.'" *White v. U.S. Dep't of Housing & Urban Dev.*, 475 F.3d 898, 904 (7th Cir. 2007) (quoting *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995)). "The elements of familial discrimination follow closely the elements of employment discrimination." *Kormoczy v. Sec., U.S. Dep't of Housing & Urban Dev. Ex. Rel. Briggs*, 53 F.3d 821, 823 (7th Cir. 1995). Familial status discrimination can be proven either under the direct method, "through direct or circumstantial evidence, or indirectly, through the inferential burden shifting method known as the *McDonnell Douglas* test." *Id.* at 823-24. "Using the direct method to establish intentional discrimination, commonly referred to as disparate treatment, a plaintiff may introduce direct evidence or circumstantial evidence." *Id.* (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). "Direct evidence is that which can be interpreted as an acknowledgment of the defendant's discriminatory intent" while circumstantial evidence provides "a basis for drawing an inference of intentional discrimination." *Id.*

Under the indirect method of proof, Plaintiffs must show that (1) they are members of a protected class; (2) they were qualified to receive the services in question; (3) they were denied or delayed the services by the Defendants; and (4) Defendants treated a similarly situated person outside of the protected class more favorably. *Krieman v. Crystal Lake Apts., L.P.*, No. 05-CV-0348, 2006 U.S. Dist. LEXIS 35379, at *20 (N.D. Ill. May 31, 2006). "To determine whether a statement indicates impermissible discrimination on the basis of familial status, an 'ordinary listener' standard is used." *Id.* (quoting *Jancik v. Dep't of Housing & Urban Dev.*, 44 F.3d 553, 556 (7th Cir. 1995)) (additional citations omitted). "The inquiry under this objective standard is whether the alleged statement would suggest to an 'ordinary listener' that a person with a particular familial status is preferred or disfavored for the housing in question." *Id.* at 905-906 (quoting *Jancik*, 44 F.3d at 556). "The ordinary listener 'is neither the most suspicious nor the most insensitive of our citizenry.'" *Id.* at 906 (citing *Jancik*, 44 F.3d at 556 n.4).

Moreover, Plaintiffs must show that Defendants' discrimination affected the *availability* of housing, not merely the habitability of housing. *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 728 (S.D. Tex. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 741-47 (5th Cir. 2005); *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 531 (5th Cir. 1996); *Reule v. Sherwood Valley I Council of Co-Owners, Inc.*, 235 Fed. Appx. 227, 227-28 (5th Cir. 2007). The habitability of a home is generally understood as the value or the ability of a resident to enjoy a home. *Id.* In contrast, a home's availability refers to the ability to acquire or sell the home. *Id.* Excluding or "steering" one group away from certain areas of a housing complex implicates availability of housing. *Cox*, 430 F.3d at 741-742 (citing *Evans v. Tubbe*, 657 F.2d 661, 663 n.3 (5th Cir. 1981)).

The Seventh Circuit has provided insight on what is and is not actionable under Section 3604. In *Halprin v. The Prairie Single Family Homes of Dearborn Park Assoc.*, 388 F.3d 327, 329-330 (7th Cir. 2004), the plaintiffs were a couple who own a home in a suburban subdivision. *Id.* at 328. The principal

defendant was the homeowners' association that managed the subdivision and provided various services to the homeowners. The other defendants, with the exception of a corporation (and its president) that also provides services and is alleged to have acted in cahoots with the association in harassing the plaintiffs, are members of the association. *Id.* The plaintiffs alleged that the defendants violated, among other things, section 3604 of the Fair Housing Act. *Id.* The district court granted defendants motion to dismiss and plaintiffs appealed. *Id.* The Seventh Circuit affirmed, and reasoned that the language of the Fair Housing Act "indicates concern with activities, such as redlining, that prevent people from acquiring property…Our plaintiffs, however, are complaining not about being prevented from acquiring property but about being harassed by other property owners. So it is difficult to see how they can have been interfered with in the enjoyment of any right conferred on them by section 3604." *Id.* (internal citations omitted.) The court concluded that

> [t]he Fair Housing Act contains no hint either in its language or its legislative history of a concern with anything but *access* to housing. Behind the Act lay the widespread practice of refusing to sell or rent homes in desirable residential areas to members of minority groups. Since the focus was on their exclusion, the problem of how they were treated when they were included, that is, when they were allowed to own or rent homes in such areas, was not at the forefront of congressional thinking. *That* problem--the problem not of exclusion but of expulsion--would become acute only when the law forced unwanted associations that might provoke efforts at harassment, and so it would tend not to arise until the Act was enacted and enforced. There is nothing to suggest that Congress was trying to solve that future problem, an endeavor that would have required careful drafting in order to make sure that quarrels between neighbors did not become a routine basis for federal litigation.

The *Halprin* decision left open the possibility that post-acquisition claims could be brought if conduct rose to the level of constructive eviction. *Id.* at 329.

In *Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009)(en banc), a full panel of the Seventh Circuit revisited the *Halprin* decision and held that "in *some circumstances* homeowners have an FHA cause of action for discrimination that occurred after they moved in." *Id.* at 772 (emphasis added.) A post-

acquisition claim could be brought under Section 3604(a) if the conduct makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction. *Id.* And "[p]roving constructive eviction is a tall order" and requires a plaintiff to "show her residence is 'unfit for occupancy,' often to the point that she is 'compelled to leave.'" *Id.* at 776. Plaintiffs acknowledge that they make no claim under Section 3604(a) but bring claims under Section 3604(b) and (c).

Consistent with the reasoning in the *Halprin Bloch* decision, all familial status discrimination cases decided by the Seventh Circuit have involved (i) steering protected individuals away from certain housing opportunities, (ii) rejecting or evicting families with children, or (iii) obviously discriminatory statements made to prospective renters. *See White v. U.S. Dep't of Hous. & Urban Dev.*, 475 F.3d 898 (7th Cir. 2007) (defendants refused to rent a dwelling to a family with children.); *Kormoczy v. Sec., U.S. Dep't of Hous. & Urban Dev. ex rel. Briggs*, 53 F.3d 821 (7th Cir. 1995) (defendants made statements that children were not welcome or that families with children were resigned to certain floors of the housing complex); *Jancik*, 44 F.3d at 556 (defendants indicated a preference based on family status and on race in both print advertisements and interviews); *Gorski v. Troy*, 929 F.2d 1183 (7th Cir. 1991) (defendants sought to evict the plaintiff because of her children); *see also Snyder v. Barry Realty, Inc.*, 953 F. Supp. 217 (N.D. Ill. 1996) (defendants denied plaintiff's application because its occupancy policy limited apartments to one occupant per bedroom, plus one); *Brisben Cos. v. Vill. of Brown Deer*, No. 99-cv-1063, 2003 U.S. Dist. LEXIS 26141 (E.D. Wis. Sept. 30, 2003) (defendants denied plaintiffs a conditional use permit for construction of two-and three-bedroom apartments/townhouses based on restrictive covenants intended to discourage families with children from moving into the area). No case within this Circuit has ever recognized a claim for familial status discrimination premised on post-acquisition rules like the ones identified by the Plaintiffs as "unreasonable" and "discriminatory."

To this end, the parties agree that Plaintiffs' familial discrimination claims are premised on the following three rules: (1) Children under the age of 10 are not to be outside on the grounds at any

time without a supervisor ("supervision rule"); (2) "No children should be in the common areas after 9:00 p.m. ("curfew rule"); (3) Children are not allowed to play in front of their units ("play-in-font rule").

### 1.      Supervision of Children Under 10

A claim premised on the adult supervision of children under 10 year old has never been recognized as discriminatory by any court within the First Circuit, Second Circuit, Third Circuit, Fourth Circuit, Fifth Circuit, Sixth Circuit, Seventh Circuit, Eight Circuit, Tenth Circuit, Eleventh Circuit, D.C. Circuit, or Federal Circuit. Only district courts in California have recognized the potential to bring an actionable claim for this type of rule. *See Bischoff v. Brittain*, 2016 U.S. Dist. LEXIS 58280, *16 (E.D. Cal. 2016); *Dumas v. Sunview Props.*, 2014 U.S. Dist. LEXIS 19263, *14-15 (S.D. Cal. Feb. 14, 2014); *Rojas v. Bird*, 2014 U.S. Dist. LEXIS 10809, *2 (C.D. Cal. Jan. 10, 2014); *Iniestra v. Cliff Warren Invs., Inc.*, 886 F. Supp. 2d 1161, 1164 (C.D. Cal. 2012); *Pack v. Fort Washington II*, 689 F. Supp. 2d 1237, 1240 (E.D. Cal. 2009); *United States v. Plaza Mobile Estates*, 273 F. Supp. 2d 1084, 1092 (C.D. Cal. 2003). Because Plaintiffs' theory of liability is novel to every jurisdiction across the country (except California), Plaintiffs' claim should be rejected and dismissed as a matter of law.

### 2.      The "Curfew Rule"

This rule is legally justified by Indiana law. Indeed, Indiana Code 31-37-3-3 establishes an 11:00 p.m. curfew for children under the age of fifteen and Indiana Code § 31-37-3-4 allows cities, towns, and counties to advance the curfew by two hours—that is, to 9:00 p.m. The rule alleged to be "discriminatory" in this case is a rule that is, for all intents and purposes, authorized by Indiana law and thus should be found to be permissible as a matter of law, and as a rule that cannot form the basis of a discrimination claim. *See e.g., Tyrrell v. Manly*, 2012 U.S. Dist. LEXIS 122840, *18, 2012 WL 3765188 (N.D. Ill. Aug. 29, 2012).

15

Moreover, no Plaintiff has established a causal connection between her and the rule. Plaintiff Lindsay Adams does not alleged that her children were ever in the common area past 9:00 p.m. and told to leave due to the curfew rule. (Third Am. Compl. ¶ 54-59.) And the Fair Housing Center has not identified any resident who was ever in the common area past 9:00 p.m. and told to leave due to the curfew rule. (Third Am. Compl. ¶ 48-59.) Accordingly, the Complaint fails to establish any causal connection between the rule and any injury, which is a fatal to Plaintiffs' claim for familial status discrimination. *See Sherwood v. Finch*, No. CV-00-349-HU, 2000 U.S. Dist. LEXIS 20906, *39 (D. Ore. Dec. 20, 2000) ("In FHA cases, there must be a causal connection between the requested emotional distress damages and the defendant's conduct."); *Morgan v. Secretary of Housing and Urban Dev.*, 985 F.2d 1451, 1459-60 (10th Cir. 1993) (although emotional distress damages are available in FHA cases for distress which exceeds the normal transient and trivial aggravation attendant to securing suitable housing, a causal connection must exist between the illegal action and the complainant's injuries); *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977) (in a FHA case, an award for emotional distress must be preceded by a finding of a sufficient causal connection between the defendant's illegal actions and the plaintiff's injury).

### 3.     Play in Front Rule

Grandville's policy that all residents (adults and children) and guests stay off the grass in front of the units is a facially neutral rule that would not cause an ordinary reader to infer an anti-children preference. Indeed, the pleadings establish that this prohibition applies equally to all residents and guests, not just children. Exhibit 5 to the Complaint says that:

- "There is no grilling in the front of your units." (Third Am. Compl., Ex. 4 at p. 2.)
- "There should be no walking, playing, or bike riding on the grass…" (Third Am. Compl., Ex. 4 at p. 3.)
- "Do not walk across the grass when going to and from your unit. We at Grandville take great pride in the appearance of our property and need for

each and every member to do the same. Please make your guests aware of this regulation." (Third Am. Compl., Ex. 5 at p. 1.)

- "No one is allowed in the lawn[.]" (Third Am. Compl., Ex. 6 at p. 1.)
- There is to be NO grilling and swimming pools in the front of your units." (Third Am. Compl., Ex. 7 at p. 1.)

These rules apply to *all* residents *and* guests and do not focus on children or families with children and therefore justify the dismissal of Plaintiffs' Complaint. *See Dumas v. Sunview Props.*, 2014 U.S. Dist. LEXIS 19263, *11-12 (S.D. Cal. 2014) (granting motion to dismiss familial discrimination claim premised on "No Playing Rule" because the Complaint fails to provide facts to support the application of a neutral policy to children); *Smith v. Moss Garden Apartments, L.P.*, No. 12-cv-2568, 2013 U.S. Dist. LEXIS 110754, 2013 WL 4026814, at *1-2 (S.D. Cal. Aug. 6, 2013 (dismissing a familial status discrimination complaint for failing to allege that individuals over 18 years of age, unlike children, were permitted to play with balls, toys, or bicycles in the apartment common area); *see also Fair Hous. Congress v. Weber*, 993 F. Supp. 1286, 1292 (C.D. Cal. 1997)(granting summary judgment for the defendant under a familial status discrimination claim, holding that "[a]n ordinary reader would not infer an anti-children preference from a requirement that all tenants keep the sidewalks and building areas clear.")

Moreover, Plaintiffs' Complaint fails to allege that individuals over 18 years of age, unlike children, were permitted to play on or walk across the grass in front of the units. Put differently, Plaintiffs have failed to establish any distinction made between families with children and those without. *Dumas v. Sunview Props.*, No. 13-cv-1425-WQH, 2014 U.S. Dist. LEXIS 19263, *11-12 (S.D. Cal. 2014); *Smith v. Moss Garden Apartments, L.P.*, No. 12-cv-2568, 2013 U.S. Dist. LEXIS 110754, 2013 WL 4026814, at *1-2. Accordingly, the Complaint fails to establish any causal connection between the rule and any injury, which is a fatal to Plaintiffs' claim for familial status discrimination. *See Sherwood*, No. CV-00-349-HU, 2000 U.S. Dist. LEXIS 20906, *39; *Morgan*, 985 F.2d at 1459-60 *Gore v. Turner*, 563 F.2d at 164.

### E.  **Plaintiffs Have Failed to State a Valid Claim for Disability Discrimination.**

The Fair Housing Act is concerned with both the furtherance of equal housing opportunity and the elimination of segregated housing." *South-Suburban Housing Center v. Greater South Suburban Bd. Of Realtors*, 935 F.2d 868, 882 (7th Cir. 1991) (citing *Southend Neighborhood Improvement Association v. County of St. Clair*, 743 F.2d 1207, 1209-2010 (7th Cir. 1984)).  The Fair Housing Act, Rehabilitation Act and Indiana Fair Housing Act each require Plaintiffs to plead similar allegations.  *See Wigginton v. Bank of Am. Corp.*, No. 11-cv-50162, 2013 U.S. Dist. LEXIS 129337, *9 (N.D. Ill. Sept. 11, 2013); *Daveri Dev. Group, LLC v. Vill. Of Wheeling*, 934 F. Supp. 2d 987, 996 (N.D. Ill. 2013) (citing *Nikolich v. Vill. Of Arlington Heights*, 870 F. Supp. 2d 556, 562 (N.D. Ill. 2012)); *State, Civil Rights Comm'n v. City Line Park, Inc.*, 738 N.E.2d 1044, 1048 (Ind. 2000) (citing *Indiana Civil Rights Comm'n v. Alder,* 714 N.E.2d 632, 636 (Ind. 1999)).

To prove a violation of the FHA, a plaintiff must show: (1) disparate treatment, (2) disparate impact, or (3) a refusal to make a reasonable accommodation.  *Daveri Dev. Group, LLC*, 934 F. Supp. 2d 987, 996 (N.D. Ill. 2013).  This is a disparate treatment case, of which there are two types: "ones that involve a facially discriminatory policy, and ones that involve more typical individualized decision-making."  *Id.* at 996 (citing *Reidt v. Cnty. of Trempealeau*, 975 F.2d 1336, 1341 (7th Cir.1992)).  Our case deals with the latter.

1. Plaintiffs Have Failed to Identify the Specific Provisions of the Fair Housing Act, Rehabilitation Act, and Indiana Fair Housing Act They Believe Defendants Violated.

Nowhere in Plaintiffs' Complaint do they clearly allege how each Defendant has discriminated against them because of their disability, or what specific provisions of the Fair Housing Act, Rehabilitation Act, or Indiana Fair Housing Act they believe Defendants violated.[5] (Third Am. Compl.

---

[5] This failure is important because there are different theories of recovery under the different sections of the Fair Housing Act.  Section 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color,

¶¶ 84 & 85.) In Count I, Plaintiffs allege that "Defendants injured plaintiffs by committing discriminatory housing practices in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, et seq." (*Id.*, ¶ 85). In Count II, after alleging that it applies to "All Defendants," Plaintiffs state in a conclusory fashion that only "Grandville and Kirkpatrick injured plaintiffs by discriminating against them in the operation of Grandville in violation of the Rehabilitation Act, 29 U.S.C. § 794." (*Id.* ¶ 87.) In Count III, Plaintiffs again allege in a conclusory fashion that "Defendants injured plaintiffs by committing discriminatory housing practices in violation of the Indiana Fair Housing Act, Ind. Code § 22-9-5." (*Id.* at ¶ 89.)  These statements are not even accurate recitations of the requisite elements of the claims, and certainly do not suffice to plausibly state a claim for relief.  *Wigginton*, 2013 U.S. Dist. LEXIS 129337, *12.  Because the minimal facts alleged in the Complaint lack a clear theory of discrimination, the Complaint should be dismissed for failure to sufficiently state a claim.  (*Id.* at *14) (granting defendant's motion to dismiss disability discrimination claims); *see also Edwards v. Lake Terrace Condo. Ass'n*, No. 1:10-cv-2986, 2011 U.S. Dist. LEXIS 43304, *7 (N.D. Ill. Apr. 21, 2011) (same).

2. <u>Plaintiffs Have Failed to Establish a Claim under 3604(f) of the Fair Housing Act.</u>

Based on the conclusory allegations in paragraph seventy-eight of the Complaint, Plaintiffs appear to be alleging that the Defendants violated Section 3604(f) of the Fair Housing Act, which states that it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap * * *."  To prove liability under 3604(f),

---

religion, sex, familial status, or national origin." *Edwards v. Lake Terrace Condo. Ass'n*, No. 1:10-cv-2986, 2011 U.S. Dist. LEXIS 43304, *7 (N.D. Ill. Apr. 21, 2011).  Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." *Id.*  Section 3604(c) makes it unlawful "to make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of dwelling that indicates any preference, limitation, or discrimination based on handicap [or] familial status, or an intention to make any such preference, limitation, or discrimination." *Jancik v. Dep't of Housing & Urban Dev.*, 44 F.3d 553, 556 (7th Cir. 1995).  Section 3604(f) makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap * * *." *Id.*

19

Plaintiffs must establish that 1) they belong to a minority; 2) Defendants were aware of it; 3) Plaintiffs were ready and able to accept Defendants' offer to rent; and 4) Defendants refused to deal with them. *Hamilton v. Svatik*, 779 F.2d 383, 387 (7th Cir. 1985). A plaintiff must also show that the defendant's actions were motivated by discriminatory intent or had a discriminatory effect. *Sievert v. Mill Valley*, No. C-90-1302-DLJ, 1992 U.S. Dist. LEXIS 14727, *15-16 (N.D. Cal. 1992). Defendants do not challenge the first two elements.

Plaintiffs' Complaint, however, fails to plausibly allege element three—that Plaintiffs were ready and able to accept the unit Ms. McFarland sought to rent. Ms. Virginia Morton is a quadriplegic. She first applied to Grandville in 2012 and stated that she **required** a handicap accessible unit. (Answer ¶ 26 & Ex. A.) When Ms. McFarland applied separately for housing at Grandville two years later, she applied for a two-bedroom townhome that was **not** handicap accessible. (Answer ¶ 29 & Ex. B.) Ms. Morton never signed the second housing application, did not personally attend the August 5, 2015 meeting, and never indicated her consent to the living arrangements pursued by her daughter, which were inconsistent with her originally stated needs. (Answer ¶¶ 26, 29 & Exs. A & B.) Plaintiffs, therefore, have failed to plausibly allege that Ms. Morton was ready, willing, and able to accept the unit for which her daughter applied. Thus, Plaintiffs have failed to state a valid claim, and Defendants are entitled to judgment on the pleadings on Counts I through III for disability discrimination.

Likewise, Plaintiffs failed to plausibly allege that they were discriminated against "because of" their disability. Plaintiffs acknowledge that Ms. McFarland volunteered information about Ms. Morton's disability during the August 5, 2015 meeting, and specifically advised the Board of Directors that Ms. Morton is a quadriplegic and could not climb stairs. (Third Am. Compl. ¶ 38.) With this information impacting what available units could accommodate everyone in Plaintiffs' household, Grandville issued the August 5, 2015 letter stating that "Grandville is not handicap accessible" and did not have any unit available that would accommodate everyone in the household. (*Id.* ¶ 40.)

Nowhere in Plaintiffs' Complaint does it allege that Grandville's statements were false—that is, that Grandville **is** handicap accessible, but denied Plaintiffs' application anyways, or that it **did** have an available unit that would have accommodated everyone in the household, but refused to provide it to Plaintiffs.  (*Id.*, generally.)  Nor does Plaintiffs' Complaint allege that Grandville's decision was based on discriminatory intent.  (*Id.*)  Because Plaintiffs have failed to plausibly allege that they were discriminated against because of their disability, and that they were ready and able to accept an available unit at Grandville, they have failed to state a claim for disability discrimination.  *See Dixie v. Kay*, No. 1:11-cv-23-TS, 2011 U.S. Dist. LEXIS 20488, *7-10 (N.D. Ind. Mar. 1, 2011).  The Complaint does not contain sufficient factual matter, even if accepted as true, to state a legally viable claim.

Lastly, the Complaint fails to plead any facts that could lead the court to conclude that defendants intentionally discriminated on the basis any protected characteristic.  *Herndron v. Hous. Auth. of S. Bend*, No. 3:15-cv-169, 2016 Dist. LEXIS 67033, *11 (N.D. Ind. May 20, 2016) (granting 12(b)(6) motion to dismiss claims under the Fair Housing Act, holding that plaintiff failure to plead any facts to show that defendants intentionally discriminated against her).  As discussed above, while Plaintiffs' now claim that Ms. Mitchell allegedly informed her daughter and a maintenance man that she denied the subject applications due to Ms. Morton's disability, an isolated statement by only one of three voting Board Members is insufficient to plausibly impute liability on behalf of Grandville and Kirkpatrick, or against Ms. Mitchell personally.

### III.      <u>**CONCLUSION**</u>

For the foregoing reasons, Defendants are entitled to judgment on the pleadings and Plaintiffs'

Complaint should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(c).


Respectfully Submitted,

<u>*/s/ Brian P. Nally*</u>
Brian P. Nally (29650-76)
Lyndsay I. Ignasiak (30690-45)
**REMINGER CO., L.P.A.**
College Park Plaza
8909 Purdue Road, Suite 200
Indianapolis, IN 46268
T: (317) 853-7372
F: (317) 663-8580
bnally@reminger.com
lignasiaki@reminger.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October, 2016, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Brian P. Nally*
Brian P. Nally (29650-76)